IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

```
DEBORA INGUAGIATO,             )
                               )
            Plaintiff,         )
                               )   No.  CV-08-1444-HU
     v.                        )
                               )
MICHAEL J. ASTRUE,             )
Commissioner of Social         )
Security,                      )   OPINION & ORDER
                               )
            Defendant.         )
_____)
```

Richard A. Sly
1001 S.W. Fifth Avenue, Suite 310
Portland, Oregon 97204

     Attorney for Plaintiff

Kent S. Robinson
ACTING UNITED STATES ATTORNEY
Adrian L. Brown
ASSISTANT UNITED STATES ATTORNEY
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2902

Stephanie R. Martz
SPECIAL ASSISTANT UNITED STATES ATTORNEY
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 901
Seattle, Washington 98104-7075

     Attorneys for Defendant

1 - OPINION & ORDER

HUBEL, Magistrate Judge:

Plaintiff Debora Inguagiato brings this action for judicial review of the Commissioner's final decision which found that plaintiff had resources exceeding the maximum allowable for continued receipt of Supplemental Security Income (SSI). This Court has jurisdiction under 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1383(c)(3)).

Both parties have consented to entry of final judgment by a Magistrate Judge in accordance with Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c). I affirm the Commissioner's decision.

## PROCEDURAL HISTORY

Plaintiff has severe chronic open angle glaucoma and severe axial myopia, rendering her legally blind. Tr. 162. In 1992, plaintiff filed concurrent claims for SSI and Social Security Disability (SSD). Tr. 18. She was found to be disabled and has since received a combination of SSD and SSI benefit payments. Id.

In 2004, the Social Security Administration (SSA) determined that plaintiff had received money from a family member as a gift, creating an overpayment of benefit payments in the amount of $4,870. Id.; see also Tr. 22-23, 30-40, 47-55, 207-10.

Plaintiff sought reconsideration of the SSA's decision, contending that the money she received from her cousin was a loan, not a gift. Tr. 41-42. The reconsideration request was denied. Tr. 43-46.

Plaintiff requested a hearing and on June 28, 2006, she appeared, with counsel, before an Administrative Law Judge (ALJ). Tr. 176-99. On August 11, 2006, the ALJ issued a decision finding that the money plaintiff received from her cousin was a gift, not

2 - OPINION & ORDER

a loan. Tr. 15-20. The Appeals Council then denied plaintiff's request for review of the ALJ's August 11, 2006 decision. Tr. 202-05.

## BACKGROUND

Plaintiff became a licensed massage therapist in 1990 in an effort to "restructure" her life around her vision loss. Tr. 185. Plaintiff obtained her massage therapist training with assistance from the Oregon Commission for the Blind. Tr. 156. Since being licensed, she has struggled to build a massage practice. Tr. 156. She never earned more than $200 in a week. Id. In 1997, the Oregon Commission for the Blind discontinued its assistance because plaintiff's massage business was unsuccessful. Tr. 157. As of April 2006, plaintiff's massage business "barely exist[ed]." Id. Her business was "practically non-existent" and it provided "basically . . . no income[.]" Id.

In April 2004, as part of a routine review, the SSA notified plaintiff that it needed information to determine if she remained financially eligible for continued receipt of SSI benefits. Tr. 22-23. This review required plaintiff to provide copies of bank statements and other financial information. Id. Plaintiff brought the requested information to the SSA office. Tr. 58. In the cover letter she wrote and submitted with the documents, plaintiff explained that her March 2002 to April 2004 bank statements showed "numerous deposits to my checking account that are not validated by my meager income or by the small amount of SSI and SSD that I receive." Id. She explained that she received these deposits from her cousin as a loan and that plaintiff had every intention of paying it back. Id. Plaintiff noted that her cousin had made a

3 - OPINION & ORDER

"death-bed promise" to both plaintiff's mother and the cousin's mother, to "help me out when necessary." Id. Plaintiff stated that she was working on ways to build up her massage practice and to increase her income. Id.

Plaintiff's cousin also wrote a letter to the SSA at this time. Tr. 59. The cousin, Janie Nelson Meyer, wrote that she had promised her mother and plaintiff's mother to "help [plaintiff] out whenever she needed it." Id. Meyer was confident that plaintiff would build her massage practice and no longer need Meyer's help. Id. Meyer admitted that she had lent money to plaintiff to "pay her bills, maintain a decent standard of living and for basic survival." Id. As of April 22, 2004, the total amount of money lent by Meyer to plaintiff was $25,675. Id. Meyer also stated that plaintiff had until the end of 2004 to increase her income through her massage business and to start paying back the money. Id.

In addition to these two letters, plaintiff submitted a promissory note, signed by plaintiff on April 21, 2004, stating that she promised to pay Meyer $25,675, and further stating that the amount may be increased by future distributions which would be recorded in an addendum to the note. Tr. 60.

In June 2004, the SSA determined, both initially and on reconsideration, that plaintiff had resources worth more than $2,000, and that she was therefore ineligible for SSI benefits for each month she had excess resources. Tr. 31-40, 43-46. The SSA concluded that a bona fide loan between Meyer and plaintiff did not exist. Tr. 44.

In advance of her hearing before the ALJ, plaintiff wrote a

4 - OPINION & ORDER

letter to the SSA in which she stated that the money received from Meyer was "to help me with basic survival issues due to the fact that my SSI and SSD combined left me below both State and Federal Poverty Guidelines[.]"  Tr. 151.  Plaintiff explained that Meyer had assured her that plaintiff would be a beneficiary of Meyer's will and that plaintiff "may inherit far more than I owe her." Id. Therefore, in plaintiff's opinion, "the 'resources' and opportunity to pay [Meyer] back are clearly available." Id. At about the same time, Meyer also submitted a letter to the SSA explaining that plaintiff is a beneficiary in Meyer's will and would inherit more than plaintiff owes.  Tr. 153.  Meyer described the loans as a "personal agreement between family members without a real time frame for payment."  Id.

At the hearing in June 2006, plaintiff testified that the money from Meyer was intended primarily for business-related things such as payments for continuing education needed to maintain her massage therapist license, insurance, and other expenses. Tr. 186-87.  She told the ALJ that she was hoping to build up her massage business to the point where not only was she self-supporting, but that she would then repay Meyer the money.  Tr. 192.  Although plaintiff stated that she "even had a business plan," when pressed by the ALJ, she noted that she had had two or three of them, between 1995 and 2000, and that the business plan had not improved her income.  Id.

Plaintiff also testified that originally, the agreement with her cousin was oral.  Tr. 189.  She acknowledged that the agreement was put in writing only after she received notice of the financial audit by the SSA.  Id.  Although she stated that she had kept track

5 - OPINION & ORDER

of the money received from her cousin, Tr. 188-89, she could not produce a hard copy of any document reflecting what she received and when. Id. Thus, when she drafted the promissory note in April 2004, she had to rely on the bank statements to calculate the sums received. Tr. 189-91.

## THE ALJ'S DECISION

The ALJ determined that Meyer provided funds to plaintiff in the following amounts: $9,500 in 2002, $10,975 in 2003, and $5,200 in 2004, for a total of $21,675.[1] Tr. 19. He noted plaintiff's testimony that Meyer helped her with funds for classes, insurance, and other items related mostly to her self-employment. Id. He also noted plaintiff's testimony that both she and Meyer kept track of the money, and that the total became larger than they intended. Id.

The ALJ explained, however, that while plaintiff indicated that she kept track of the amount of money, plaintiff acknowledged that she did not have records to document how she did so. Id. The ALJ noted plaintiff's testimony that the money was not a conventional loan and was different because it was a family situation. Id.

The ALJ further noted plaintiff's testimony that Meyer was going to name plaintiff as a beneficiary in Meyer's will, and that upon Meyer's death, the amount of money plaintiff had previously received from Meyer would be repaid from the bequest. Id. According to the ALJ, plaintiff "characterized the money provided

---

[1] I assume the $21,675 figure is a typographical error as the sums the ALJ separately listed for 2002, 2003, and 2004 equal $25,675 when added together.

6 - OPINION & ORDER

as an advance on an inheritance." Id.

The ALJ recited the contents of the April 21, 2004 promissory note, as well as the April 22, 2004 letter from Meyer to the SSA and the April 26, 2004 letter from plaintiff to the SSA explaining that the money was a loan, not a gift. Id. The ALJ then stated that "[i]t must be noted that these 'documents' were all created after the issue of excess resources, unearned income, eligibility for Supplemental Security Income, and the overpayment arose." Id. The ALJ cites to an April 20, 2006 statement by Meyer in which she indicated that the money was a loan and that it was a personal agreement with family members "without a real time frame" for payment. Id.

The ALJ then offered the following reasoning in support of his determination that the money from Meyer to plaintiff was a gift, not a loan:

> While the claimant contends that the money provided was a loan, the evidence provided fails to support this conclusion. The promissory note was not created until after the problem of overpayment arose and was not in effect at the time the money was advanced to the claimant. Therefore, there was no loan agreement prior to the alleged loan or during the period of time in question. There is no evidence of a conventional individual loan, no consideration was given for the alleged loan, and the promissory note is effectively not legally enforceable. While the Social Security Regulation acknowledges loans without interest[,] most loans made, even those between close parties, do require the payment of interest and include when and how the loan is to be repaid, and, provide information as to consequences for default. There is also the fact that the claimant, despite allegations to the contrary, lacks even the most minimal ability to repay any loan. Her self-employment was not successful in the past, and the contention that she was going to build up her business and repay the alleged loan is at odds with consistent history. Furthermore, subsequent to the determination of the overpayment the claimant has not been able to build up her business and, in fact, has engaged in less self-employment. Finally, the contention that the claimant

7 - OPINION & ORDER

>has the means to repay the loan because she is named as a beneficiary in the cousin's will does not advance her argument. At best, this is an unenforceable promise by her cousin that could change at any time. Indeed, there may be nothing in her estate to bequeath. Of greater importance, however, is that this argument strongly supports the proposition that this money was indeed not a loan but an advance on a planned bequest at death based on the family considerations discussed by the claimant.

Id. at 19-20.

## STANDARD OF REVIEW

The ALJ's decision may be set aside only if it is not supported by substantial evidence or if it is based on legal error. Bray v. Commissioner, 554 F.3d 1219, 1222 (9th Cir. 2009). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Valentine v. Commissioner, 574 F.3d 685, 690 (9th Cir. 2009) (internal quotation omitted). It is a "highly deferential standard of review." Id. Additionally, even if the evidence could result in "more than one rational interpretation, it is the ALJ's conclusion that must be upheld." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

## DISCUSSION

Under the applicable law, unmarried SSI beneficiaries may own no more than $2,000 in countable resources to maintain their eligibility for SSI benefits. 20 C.F.R. § 416.1205(c). Money borrowed by a claimant is not considered income, and thus, does not count toward the $2,000 resource ceiling. 20 C.F.R. § 416.1103(f).

Social Security Regulation (SSR) 92-8p (available at 1992 WL 466905), provides that a loan is "an advance from lender to borrower that the borrower must repay, with or without interest."

8 - OPINION & ORDER

Id. at *2. SSR 92-8p further provides that "[t]he loan agreement may be oral or written, as long as it is enforceable under State law." Id. Additionally, plaintiff bears the burden of proof with respect to the bona fide nature of the loan. Id.

As defendant notes, under the applicable law and regulation, for the money plaintiff received from Meyer not to count as a resource, potentially disqualifying her from receiving SSI in certain months, plaintiff has to prove that she was bound by an enforceable loan agreement that required her to repay the money.

Plaintiff asserts that the ALJ's decision is not supported by substantial evidence and that the ALJ applied an improper legal standard. Pltf's Opening Brief at p. 8. As to the alleged legal error, although it is not entirely clear, I understand her argument to be that the ALJ erred because he concluded that the money plaintiff received from Meyer was not a loan because the agreement was not originally in writing.

As I read the ALJ's rationale, I note four independent reasons for his conclusion that the money was a gift, not a loan: (1) the promissory note was created after the fact and after plaintiff learned of the SSA audit; (2) there were no indicia of a conventional loan including no consideration, no interest, no terms of repayment, and no consequences for default; (3) plaintiff had no ability to repay the loan from her self-employment; and (4) the fact that Meyer and plaintiff believed that plaintiff could repay the loan from the anticipated bequest from Meyer demonstrated that the money was essentially an advance of a gift or bequest.

The ALJ cited several reasons for his conclusion, only one of which had to do with the form of the agreement. Additionally, even

9 - OPINION & ORDER

as to the form of the agreement, the ALJ's conclusion was not based on the fact that the agreement was oral, but rather, on the fact that the timing of the creation of the written document raised questions about the underlying nature of the payments. Thus, I reject plaintiff's argument initially because I disagree with her position that the ALJ's decision was based on the fact that the agreement was not in writing.

Additionally, the ALJ did not suggest that oral agreements are unenforceable under Oregon law. Instead, as I understand the decision, the ALJ indicated that the promissory note was not legally enforceable because there was insufficient evidence to indicate that the payments were ever intended as a loan. Without an initial oral obligation to repay the money, the subsequently created promissory note was unenforceable under Oregon law. See Marriage of Street, 90 Or. App. 466, 469-72, 753 P.2d 424, 425-27 (1988) (when collective facts showed that parties to transaction treated money as a gift, later-created promissory notes did not alter the nature of the transfer and such promissory notes were unenforceable).

In terms of substantial evidence, plaintiff contends that there is no evidence that the payments to plaintiff were ever intended by Meyer as a gift. She first argues that if she failed to repay Meyer out of funds generated by her self-employment as a massage therapist, the potential inheritance from Meyer was another source of funds she could have used.

Second, plaintiff contends that the ALJ should not have relied on the fact that there was no contemporaneous documentation of the amounts provided by Meyer to plaintiff because nothing in the law

10 - OPINION & ORDER

requires that a loan must be documented by certain records. Furthermore, plaintiff argues, the timing of the creation of the written documents does not contravene the expression of an oral agreement made at the commencement of the loans in 2002.

Next, plaintiff argues that gifts are traditionally made in lump sums and thus, because she received payments over time, the money here was a loan. Plaintiff cites no basis to support this assertion. Plaintiff then argues that just because she might not have been able to earn what she had hoped to earn in her business does not alter her intent at the time payments began. Finally, plaintiff contends that even if the money is an advance of a planned bequest, it does not make the money a gift as opposed to a loan.

Plaintiff's arguments are unpersuasive. As discussed above, the ALJ articulated several reasons in support of his conclusion that plaintiff's assertion that the money she received from Meyer was a loan rather than a gift, is not credible. An inability to repay money is relevant to the determination of whether the transfer was intended as a gift or a loan. E.g., Street, 90 Or. App. at 471, 753 P.2d at 426 (noting, in the context of discussing facts suggesting that money was a gift, not a loan, "it is extremely difficult to understand how husband and wife could possibly have paid any of the notes on demand or otherwise. . . . Father could not realistically have expected the loans to be repaid . . . .").

Here, the record shows that plaintiff had generated only negligible income from her massage business over the years. Although she contends that she intended, at the "beginning of the

11 - OPINION & ORDER

loan process in 2002," to make her business more successful, the ALJ's finding that this was not consistent with the history demonstrated in the record, is supported by substantial evidence.

Plaintiff had earned very little money as a massage therapist when Meyer began transferring money to plaintiff in 2002. The Oregon Commission of the Blind had ended its support five years earlier because the business was unsuccessful. Plaintiff testified about a business plan at the hearing, but then indicated that her two to three business plans were developed between 1995 and 2000. Tr. 192. Additionally, she spent very little of the money she received from Meyer in attempting to build her business. Tr. 116 (showing, in 2002, marketing expenditures of $375 for a magazine advertisement and $49 in new business cards); Tr. 108 (showing, in 2003, $810 spent on a magazine advertisement, $476 on a phone book advertisement, and under $100 on miscellaneous expenses from retailers such as Office Depot).

As the ALJ noted, the record does not support plaintiff's contention that she was going to be able to build up her business to the point of repaying Meyer. Additionally, the ALJ's conclusion regarding the use of a future bequest as a means of repayment is sound. The bequest is an unenforceable promise because Meyer retained the ability to change her will at any time. Furthermore, plaintiff admitted at the hearing that she did not know the amount she expected to inherit, and that whatever Meyer left in her estate would also be shared with Meyer's children and grandchildren. Tr. 194. The ALJ drew a reasonable inference from the evidence in concluding that the possibility of an eventual inheritance of an undisclosed sum did not reasonably provide plaintiff with a means

12 - OPINION & ORDER

of repaying the sums Meyer transferred to her.

Finally, as to plaintiff's argument that the lack of contemporaneous documentation is not inconsistent with a loan, this is a relevant factor. E.g., Street, 90 Or. App. at 470-71, 753 P.2d at 426 ("the lapse of time between receipt of the money and execution of the notes suggests that the money was a gift and that the notes were meant to serve some purpose other than to evidence a real debt."). The ALJ's inference was reasonable given plaintiff's failure to keep track of the payments as received and the subsequent creation of documentation.

The ALJ's findings must be upheld if they are supported by inferences reasonably drawn from the record. Batson v. Commissioner, 359 F.3d 1190, 1193 (9th Cir. 2004). Here, the ALJ's conclusion is based on reasonable inferences drawn from substantial evidence in the record.

II.  Waiver and Other Arguments

In her opening memorandum, plaintiff incorporates by reference written arguments made to the Appeals Council on her behalf by attorney Linda Ziskin in April 2007. Pltf's Opening Brief at p. 5. This Appeals Council brief is found at pages 172 to 175 of the Administrative Record. There, Ziskin makes three arguments, one of which is that the money from Meyer was a loan, not a gift. Given that the basis for plaintiff's appeal of the ALJ's decision in this case is this same argument, and given that I affirm the ALJ, I do not discuss this further.

Ziskin also contends that the SSA never sent plaintiff the required overpayment notice. In response, defendant concedes that a copy of the Notice of Overpayment that had been sent to plaintiff

13 - OPINION & ORDER

in July 2004 was, at one point, inadvertently omitted from the administrative record. It is now found at pages 207 to 211 of the record. Thus, the argument is moot.

Finally, Ziskin argues that plaintiff should be granted a waiver of a repayment obligation. Plaintiff also mentions the waiver request in the procedural and historical background section of her opening brief. Pltf's Opening Brief at pp. 4, 5. However, as explained below, the waiver request is not properly before this Court.

Plaintiff first received notice that her SSI benefits were to be changed based on the excess income received from Meyer, on June 2, 2004. Tr. 30-40. That notice told plaintiff of her right to appeal within sixty days, and further informed her that if she filed her appeal within ten days, she would continue to receive the same SSI check while the case was reviewed. Tr. 33-34. Plaintiff filed her appeal on June 10, 2004, within the ten days. Tr. 41. SSA then reconsidered the determination of her SSI ineligibility, but it adhered to its prior determination. Tr. 43-46. Plaintiff was informed of her right to request a hearing, which she did. Tr. 44-45, 56.

The formal notice of overpayment was issued on July 8, 2004. There, plaintiff was told that she could ask for a waiver, ask for an appeal, or both. Tr. 207. As to the waiver, the overpayment notice explained that in certain cases, a claimant may not have to repay the overpayment to the SSA. Id. The SSA explained that it can waive the collection of an overpayment if: (1) it is not the claimant's fault that the claimant received too much money; and (2) paying back the money would mean the claimant could not pay bills

14 - OPINION & ORDER

for food, clothing, housing, medical care, or other necessary expenses, or it would be unfair for some other reason. <u>Id.</u> Plaintiff was told she could fill out a waiver form. <u>Id.</u>

Plaintiff submitted a waiver request on April 17, 2006, almost two years after being notified of her right to do so, and almost two years after her request for an appeal of the initial determination. Tr. 141-48. There, she indicated that the overpayment was not her fault and she could not afford to pay the money back, or that repayment was unfair. Tr. 141. In answering the question of why she was not at fault in causing the overpayment or in accepting the money, plaintiff wrote that the money was a loan from a family member and that the SSA wrongfully determined that it was a gift. Tr. 142.

On May 1, 2006, the SSA responded to plaintiff's waiver request. Tr. 136. It informed her that the waiver form is not intended for use when a person disagrees with the facts that caused the overpayment. <u>Id.</u> In such a case, the SSA treats the request as an appeal rather than a waiver. <u>Id.</u> Because plaintiff already had a pending appeal on the issue, the SSA stated that its field office lacked jurisdiction to consider it and instead, it would forward her request to the Office of Hearings and Appeals. <u>Id.</u>

During plaintiff's hearing before the ALJ on June 28, 2006, plaintiff's counsel noted that he was unsure if the waiver request was properly before the ALJ. Tr. 183. The ALJ did not mention it in his decision which addressed the issue of "excess resources" only. Tr. 18.

The September 2, 2008 Appeals Council order denying plaintiff's request for review explained that the waiver issue was

15 - OPINION & ORDER

not before the ALJ. Tr. 203. At that time, no initial or reconsidered determination had been made on the waiver issue and the hearing notice did not include it as an issue to be addressed at plaintiff's hearing. Id. The Appeals Council explained that because of the language plaintiff used in the "fault" section of her waiver request, the local SSA office concluded that she was not truly seeking a waiver, but instead, was appealing the determination that an overpayment had occurred. Id.

At this point, any issue regarding plaintiff's waiver request is not before this Court. A federal court's scope of judicial review under the Social Security Act is limited to the Commissioner's final decision after a hearing. 42 U.S.C. § 405(g); Subia v. Commissioner, 264 F.3d 899, 902 (9th Cir. 2001). Because the ALJ did not address the issue of plaintiff's request for a waiver of the overpayment, there has been no final decision subject to judicial review. Id.

Although plaintiff states she incorporates Ziskin's April 2007 arguments by reference, plaintiff does not separately raise or brief the waiver issue in the materials submitted to this Court. And, she affirmatively describes the issue for judicial review as the August 11, 2006 decision of the ALJ which determined that plaintiff had received excess resources in the form of a gift, not a loan. Pltf's Opening Brief at pp. 8-9. The absence of any argument regarding waiver in plaintiff's memoranda supports the conclusion that plaintiff herself limits this appeal to the ALJ's determination that the money from Meyer was a gift, not a loan. Plaintiff's request for waiver is not properly before the Court.
/ / /

CONCLUSION

The Commissioner's decision is affirmed.

IT IS SO ORDERED.

Dated this  3rd   day of  December  , 2009.


/s/ Dennis James Hubel
Dennis James Hubel
United States Magistrate Judge

17 - OPINION & ORDER